Filed 9/6/23  P. v. Trujillo CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B317664 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. NA071027 |
| v. | |
| FERNANDO TRUJILLO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Richard M. Goul, Judge. Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In 2008, defendant and appellant Fernando Trujillo was convicted of second degree murder. Trujillo now appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1] The trial court concluded Trujillo was not eligible for resentencing because he was a direct aider and abettor who acted with implied malice in the murder of Miguel Amezcua.[2] Trujillo argues that the court's findings are not supported by substantial evidence. We disagree and affirm the denial of Trujillo's petition for resentencing.

## FACTS AND PROCEDURAL BACKGROUND

### 1. The Offense[3]

The murder took place on July 21, 2006, in the midst of a backyard party at a home in Wilmington. A disc jockey was playing music and people were dancing, drinking beer, and socializing. The party was attended by approximately 50 people.

---

[1] All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, former section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the law formerly codified at section 1170.95 as section 1172.6 for the remainder of this opinion.

[2] We reference herein both Miguel Amezcua and his brother, Luis Amezcua. To avoid confusion, we use the brothers' first names. We may also refer to Miguel as the victim. No disrespect is intended.

[3] We take our statement of facts from evidence admitted at the 2008 trial, specifically the trial testimony of the victim's brother who witnessed the murder, other witnesses who attended the party that preceded the murder, and the medical examiner who conducted the victim's autopsy. (§ 1172.6, subd. (d)(3).)

At least 10 members of the Eastside Wilmas gang, including Michael Robles and Trujillo, were present and socializing together. Miguel and his brother Luis were also at the party.

At some point around 11:30 p.m., a conflict arose. Approximately eight gang members, including Trujillo, began attacking two friends of Miguel's but they got away and went inside the home. After the disc jockey heard about the scuffle, he stopped the music, announced that the party was over, and directed everyone to leave the backyard using a gate toward the front of the residence, near the garage. Several minutes passed as the partygoers left the backyard.

Meanwhile, Luis, who had been inside the home briefly, exited the front door of the home and saw Miguel arguing with one of the gang members in front of the garage. After Miguel made a sharp movement toward that gang member, approximately six other gang members, including Trujillo, began beating Miguel. Luis approached but was attacked by someone else.

As Miguel attempted to cross the front yard toward his car, the gang members, including Trujillo, persisted in their beating. Miguel was unable to defend himself. A single shot was fired, followed by a pause. The gang members continued to kick and punch Miguel, even as he fell to the ground, face down and unmoving. After a minute or two, the gang members stopped and stepped back. Robles fired at least two shots at Miguel, who was still on the ground, including one shot to the back of his head at close range. Miguel died at the scene.

The coroner's examination revealed that Miguel sustained extensive blunt force trauma to his head, torso, and extremities, and two gunshot wounds. He had no bruising on his hands.

## 2. Conviction, Sentence, and Direct Appeal[4]

Robles and Trujillo were charged with murder committed for the benefit of a criminal street gang. (§§ 187, 186.22, subd. (b)(1)(C).) Both defendants were also charged with multiple sentencing enhancements relating to Robles's use of a firearm. (§ 12022.53, subds. (b)–(e).)

In 2008, Robles and Trujillo were tried together before a jury. As pertinent here, the jury was instructed on murder with express or implied malice, degrees of murder, aiding and abetting, natural and probable consequences, simple assault, and simple battery.[5] During her closing argument, the prosecutor argued that Trujillo could be found guilty of murder as a direct aider and abettor or under the natural and probable consequences theory. The jury convicted Robles of first degree murder and convicted Trujillo of second degree murder. As to both defendants, the jury found the gang and firearm allegations true. The court sentenced Robles to a prison term of 50 years to life and sentenced Trujillo to a prison term of 40 years to life.

We affirmed both convictions on direct appeal in *People v. Trujillo et al.* (Oct. 6, 2009, B207534) [nonpub. opn.].[6]

---

[4] Procedural facts are taken in part from *People v. Trujillo et al.*, *supra*, B207534 [nonpub. opn.]. (§ 1172.6, subd. (d)(3).)

[5] Simple assault and simple battery were the target offenses related to the natural and probable consequences theory.

[6] We also affirmed the court's denial of Robles's motion for new trial in *People v. Trujillo* (May 4, 2012, B234294) [nonpub. opn.].

### 3. Petition for Resentencing, Ruling, and Appeal

In January 2019, Trujillo filed a petition for resentencing under former section 1170.95. The trial court appointed counsel for Trujillo, ruled that he established a prima facie case of eligibility for relief, and issued an order to show cause.

After briefing by both parties, the trial court held an evidentiary hearing. The prosecution did not offer new evidence. Accordingly, the court relied on the petition, opposition, and supplemental briefs, as well as the court record including exhibits, transcripts, and minute orders. The trial court found the evidence proved beyond a reasonable doubt that Trujillo acted as a direct aider and abettor in the murder and acted with implied malice. Specifically, the court made the following finding: "Petitioner Fernando Trujillo with other gang members actively and directly participated in a multi-staged assault upon Miguel Amezcua that resulted in Amezcua's death. Petitioner could have left after the first assault in the backyard. He and fellow gang members chose instead to assault the victim in front of the house. Petitioner did not walk away after the first or second blow to Amezcua. He continued the assault until its purpose, the death of Amezcua, was achieved."

The court denied Trujillo's petition for resentencing. Trujillo timely appeals.

## DISCUSSION

### 1. Senate Bill No. 1437 and Section 1172.6

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule. (*People v. Reyes* (2023) 14

Cal.5th 981, 984 (*Reyes*); *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) The bill amended section 188 by adding the requirement that, except as stated in section 189, subdivision (e), "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also created a procedure, now codified at section 1172.6, for a person convicted of murder under the former law to be resentenced if he or she could no longer be convicted of murder under amended section 188. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.) A defendant begins by filing a petition containing a declaration that, among other things, he or she could not presently be convicted of murder under the current law. (*Strong*, *supra*, 13 Cal.5th at p. 708.) If the court receives a petition that establishes a prima facie case for relief, it must appoint counsel for the petitioner, if requested. The trial court also must issue an order to show cause and hold an evidentiary hearing. (*Ibid.*; § 1172.6, subds. (b)(3), (c), & (d)(1).) At the evidentiary hearing, it is the prosecution's burden to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1172.6, subd. (d)(3); *Strong*, at pp. 708–709; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) If the trial court finds beyond a reasonable doubt that the petitioner is guilty of murder notwithstanding the amendments to sections 188 and 189, the petitioner is ineligible for relief under section 1172.6. (*Strong*, at pp. 708–709; *Vargas*, at p. 951.)

6

## 2. Standard of Review

We review the trial court's findings for substantial evidence. (*Reyes, supra*, 14 Cal.5th at p. 988.) Under this standard, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Ibid.*) We do not resolve credibility issues or evidentiary conflicts. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022.) Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) Before we may set aside a trial court's order, it must be clear that " ' "upon no hypothesis whatever is there sufficient evidence to support [it]." ' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

## 3. Substantial evidence supports the court's finding that Trujillo is ineligible for relief under section 1172.6.

The court found Trujillo ineligible for relief under section 1172.6 because the prosecution proved beyond a reasonable doubt that he was a direct aider and abettor of the murder who acted with implied malice. Substantial evidence supports the court's finding.

### 3.1. Legal Principles

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) Malice may be express or implied. (§ 188, subd. (a).) "It is express when there is a manifest intent to kill (§ 188, subd. (a)(1)); it is implied if someone kills with 'no considerable provocation … or when the circumstances attending the killing show an abandoned and malignant heart.'

7

(§ 188, subd. (a)(2)).” (*Gentile, supra*, 10 Cal.5th at p. 844.) “The primary difference between express malice and implied malice is that the former requires an intent to kill but the latter does not.” (*People v. Soto* (2018) 4 Cal.5th 968, 976.)

As noted, Senate Bill 1437 limited the circumstances in which a defendant such as Trujillo, who did not commit the murder, can nonetheless be convicted of murder. Direct aiding and abetting is one such circumstance and it remains a viable theory of conviction. Our Supreme Court has recognized that “ ‘notwithstanding Senate Bill 1437’s elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.’ ” (*Reyes, supra*, 14 Cal.5th at p. 990, citing *Gentile*, *supra*, 10 Cal.5th at p. 850.)

The court recently clarified the direct aiding and abetting theory of implied malice murder:

“ ‘[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor’s own mens rea. ([*People v. McCoy* (2001) 25 Cal.4th 1111, 1122.]) In the context of implied malice, the actus reus required of the perpetrator is the commission of a life endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit

8

*the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' ([*People v.*] *Powell* [(2021)] 63 Cal.App.5th [689,] 712–713, fn. omitted; and see *id.* at p. 713, fn. 27 ['The relevant act is the act that proximately causes death.'].)

"*Powell* further explained: 'The reason why there is a dearth of decisional law on aiding and abetting implied malice murder may be the heretofore availability of the natural and probable consequences doctrine for second degree murder, which was easier to prove. … [T]he natural and probable consequences doctrine did not require that the aider and abettor intend to aid the perpetrator in committing a life-endangering act … . What was natural and probable was judged by an objective standard and it was enough that murder was a reasonably foreseeable consequence of the crime aided and abetted.' ([*People v.*] *Powell*, *supra*, 63 Cal.App.5th at p. 711, fn. 26.)" (*Reyes, supra*, 14 Cal.5th at pp. 990–991.)

### 3.2. Analysis

Viewing the evidence in the light most favorable to the trial court's order, the record contains substantial evidence that Trujillo acted with implied malice when he aided and abetted the killing of Miguel Amezcua.

As to the actus reus, Trujillo's conduct plainly aided the murder. Trujillo participated in the severe beating of the victim prior to the shooting. That beating rendered the victim unable to fight back and, eventually, the victim was face down on the ground and immobile. This provided Robles the opportunity to shoot the victim at close range without any resistance.

9

As to Trujillo's mens rea, the evidence supports a reasonable inference that Trujillo knew Robles intended to shoot the victim and intended to aid him in doing so. Specifically, while the beating was underway, one shot was fired. Although no witness testified Robles fired that shot, he was the only person seen to be armed. It is therefore reasonable to infer that Robles fired that shot. Undoubtedly, the first shot, followed by a pause, put the other gang members on notice that Robles was armed and intended to use his gun. The obvious target was, of course, the victim of the beating. The fact that the beating continued after the first shot also strongly suggests that the participants, including Trujillo, were aware that the beating would subdue the victim so that Robles could shoot him easily at close range and without any concern for his own safety. Certainly, Trujillo knew that firing a gun at a person is dangerous to human life. As a long-time gang member who lost a friend in a gang-related shooting, and as a victim of a gang-related shooting himself, Trujillo was aware of the consequences of gun violence.

Finally, the circumstances demonstrate that Trujillo acted with a conscious disregard for human life. According to eyewitnesses, the beating was severe and continued for several minutes. The victim could not fight back, nor could he escape. The victim's brother was prevented from coming to his aid by another gang member. And the beating continued after Robles fired his gun the first time and even after the victim fell to the ground and appeared to be unconscious.

In short, this substantial evidence supports the court's finding beyond a reasonable doubt that Trujillo aided and abetted the murder with implied malice. (See, e.g., *People v. Schell* (2022) 84 Cal.App.5th 437, 442–443 [finding evidence sufficient to

10

support implied malice second degree murder where defendant was one of at least eight gang members who participated in assault, defendant knew he was aiding in the attack, he knew others were using dangerous weapons in the attack, and he intended to stop the victim from escaping].)

In his first two arguments, Trujillo contends that the court could not reasonably have found that he committed a willful, deliberate, and premeditated murder, i.e., murder in the first degree. But because the jury convicted Trujillo of second degree murder rather than murder in the first degree, this argument is misdirected. Trujillo also asserts that the facts do not support a finding that he acted with express malice. We need not address this contention, however, as we have concluded that substantial evidence supports the court's finding that Trujillo acted with implied malice and such a finding is sufficient to support his conviction.

Next, Trujillo argues that a necessary element of implied malice is "a conscious disregard for human life" and that neither the jury nor the trial court made that specific finding. We agree with Trujillo that a conscious disregard for human life is a necessary element of implied malice. (*Reyes, supra*, 14 Cal.5th at pp. 991–992.) We also agree that the jury's verdict of second degree murder does not indicate, one way or the other, whether the jury relied on the natural and probable consequences theory (which did not require the jury to find that he acted with implied malice) or the aiding and abetting theory (which did require a finding of implied malice.) But in the context of a petition for resentencing under section 1172.6, the question for the court, sitting as a trier of fact, is whether the prosecution can prove the defendant's guilt under a now-viable theory of conviction.

11

(§ 1172.6, subd. (d)(3).) In other words, the court considers that question anew and is typically not concerned with the jury's theory of conviction which is, in any event, unknown in this case because the jury was not asked to consider a special allegation or finding on that point. (Cf. *People v. Henley* (2022) 85 Cal.App.5th 1003, 1020–1021 [noting trial court considering a petition for resentencing may not make a factual finding that directly contradicts a jury's finding on a special allegation].)

Finally, Trujillo appears to contend that the court's finding of implied malice is defective because the court used the phrase "reckless indifference to human life" rather than "conscious disregard for human life." Specifically, he claims "[t]he finding that [Trujillo] exhibited a 'reckless indifference to human life' does not address the immediacy of the threat or [Trujillo's] awareness of it." Oddly, however, Trujillo does not discuss the evidence nor does he explain why the evidence does not support a finding that he acted with a conscious disregard for human life. He simply parses the court's order and leaves it at that. This approach does not address the question before us, i.e., whether substantial evidence supports the court's finding that Trujillo acted with implied malice. We reject this argument without further discussion. (See *Meda v. Autozone, Inc.* (2022) 81 Cal.App.5th 366, 383 [noting matters not properly raised or that lack adequate legal discussion will be deemed forfeited].) In any event, as we have already explained, substantial evidence supports the court's finding that Trujillo acted with implied malice.

In sum, the court did not err in denying Trujillo's petition for resentencing under section 1172.6.

## DISPOSITION

The order denying the petition for resentencing is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, Acting P. J.

WE CONCUR:


EGERTON, J.


HEIDEL, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief
Justice pursuant to article VI, section 6 of the California Constitution.